UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| TOHO CO., LTD, <br><br>            Plaintiff, <br><br> v. <br><br> NEW ORLEANS LAGER & ALE BREWING COMPANY, LLC; and DOES 1 through 10, inclusive, <br><br>            Defendants. | Civil Action No.  13-5750 <br><br> SECTION F-2 <br><br> JUDGE: MARTIN L.C. FELDMAN <br><br> MAGISTRATE JUDGE: JOSEPH C. WILKINSON, JR. |

**PLAINTIFF TOHO CO., LTD.'S MEMORANDUM IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT**

## I.    INTRODUCTION

Godzilla is one of the most recognized fictional characters in the history of cinema. Plaintiff, Toho Co. Ltd. ("Toho"), owns the copyright in the motion picture *Godzilla* as well as in dozens of sequels featuring the Godzilla character.  Five of those sequels also feature a character called "Mechagodzilla" — a mechanical, robot-like version of Godzilla.  The Mechagodzilla name and character image are federally registered trademarks belonging to Toho.

Defendant, New Orleans Lager & Ale Brewing Company, LLC ("NOLA"), is a brewery. Keenly aware of Toho's Mechagodzilla character, and hoping to attract attention to itself by appropriating that character, NOLA began distributing a beer in 2012 that it called

"Mechahopzilla."  Not only is the name of the beer nearly identical to Toho's "Mechagodzilla" trademark, but NOLA also used character images on its tap handles and beer cans that are substantially similar to the Mechagodzilla character.  In this action, Toho has asserted claims against NOLA for trademark infringement, violation of the Lanham Act, copyright infringement, and violation of Louisiana's unfair competition law and Anti-Dilution Statute.

The facts are undisputed.  NOLA admits that it intended to create an association between Mechagodzilla and its beer in the minds of consumers.  In this motion, Toho seeks partial summary judgment on three distinct issues:

First, the Court should find that NOLA's conduct does not constitute "parody" as a matter of law.  Under well-established copyright and trademark law, parody has a limited and distinct meaning.  There must be some commentary or substantive sentiment expressed about the underlying protected work.  Here, there was none.  It is not permissible for a business to simply use someone else's trademark to attract attention to its own product, regardless of how "funny" or "clever" it thinks the use may be.  Given the undisputed facts as to what NOLA did and why, its use is not a parody.

Second, the Court should find that NOLA has infringed Toho's trademarks and violated the Lanham Act by creating a likelihood of consumer confusion as to whether Toho has sponsored or is associated with NOLA's beer.  15 U.S.C. §§ 1114, 1125(c).  Consumers need not believe that Toho actually produced the beer at issue; it is enough that they are likely to believe that Toho authorized it.  Like many owners of valuable intellectual property, Toho has for years licensed its Godzilla and Mechagodzilla characters for all manner of merchandise and commercial endorsements – including alcoholic beverages.  In light of the undisputed facts, the Court should conclude that there is a likelihood of confusion as to whether Toho sponsors or is associated with NOLA's beer.

Third, the Court should find that NOLA has violated Louisiana's Anti-Dilution Statute. La. Rev. Stat. § 51:223.1.  As to this issue, even without consumer confusion, the Court should conclude that NOLA's actions are likely to dilute the distinctive quality of Toho's

- 2 -

Mechagodzilla trademarks.  The Anti-Dilution Statute is designed to protect owners of distinctive trademarks, such as Toho, from the type of misappropriation undertaken by NOLA here.

## II.   FACTS

### A.   Toho's Ownership of the Godzilla Films and the Mechagodzilla Character

Toho is a Japanese motion picture studio.  In 1954, Toho created a fictional character called "Godzilla," a giant prehistoric monster.  At the same time, Toho produced and distributed a feature length motion picture entitled *Godzilla* (in Japanese, *Gojira*) based upon the reawakening of Godzilla by the detonation of an atomic bomb.  The film was released in the United States in 1956 under the title *Godzilla, King of the Monsters*.  Thereafter, Toho produced and distributed throughout the world a series of motion pictures based upon the further adventures of Godzilla.  Toho has produced more than 25 sequel films featuring its Godzilla character.  In 1998, with Toho's consent, TriStar Pictures produced a Hollywood version of *Godzilla* that grossed more than $375,000,000 worldwide.  On May 16, 2014, a new major motion picture version of *Godzilla* will be released by Warner Bros.  Declaration of Yukio Kotaki ("Kotaki Decl."), ¶ 3.

In addition to the Godzilla character, other derivative characters have appeared in the Godzilla films throughout the sixty year history of the franchise.  These include the character at issue in this lawsuit, "Mechagodzilla" (the "Mechagodzilla Character").  Toho first introduced the Mechagodzilla Character in 1974, in a film entitled *Godzilla vs. Mechagodzilla*, the fourteenth film in the Godzilla series.  Since then, the Mechagodzilla Character has appeared in four additional films: *Terror of Mechagodzilla* (1975), *Godzilla vs. Mechagodzilla II* (1993), *Godzilla Against Mechagodzilla* (2002), and *Godzilla: Tokyo S.O.S.* (2003) (collectively, with *Godzilla vs. Mechagodzilla*, the "Mechagodzilla Films").  All of the Mechagodzilla Films have been distributed in the United States, either on television or home video.  Kotaki Decl., ¶ 4.

Mechagodzilla is, in effect, Godzilla's mechanical "doppelgänger." While the character's appearance has evolved over the course of the films in which it has appeared, Mechagodzilla is consistently featured as an armored, robotic version of Godzilla – a large, powerful, erect-standing, two-footed, reptilian creature with a long lizard-like tail, muscular forearms and legs, and spikes along its back. Kotaki Decl., ¶ 5. The Mechagodzilla Character, as depicted in a licensed action figure, appears below:



Kotaki Decl., ¶ 5.

In 1999, Toho registered both the name and the character image of "Mechagodzilla" as trademarks under the Lanham Act, 15 U.S.C. § 1051 *et seq*., and Toho remains the owner of these marks. Kotaki Decl.,¶ 6, Exh. A (U.S. Trademark Reg. No. 2,224,471 for Mechagodzilla word mark and U.S. Trademark Reg. No. 2,231,004 for Mechagodzilla design mark) (collectively, the "Mechagodzilla Marks").

In addition to its Mechagodzilla Marks, Toho owns registered copyrights in each of the Mechagodzilla Films:

  a. *Godzilla vs. Mechagodzilla* (aka *Godzilla Tai Mechagodzilla*), Reg. No. RE 873-664, PA 382-933;

  b. *Mechagodzilla No Gyakushu* (aka *Terror of Mechagodzilla*), Reg. No. RE 891-979, PA 317-015;

  c. *Godzilla vs. Mechagodzilla II* (aka *Godzilla vs. Super-Mechagodzilla*), Reg. No.  PA 796-966;

  d. *Godzilla X Mechagodzilla* (aka *Godzilla Against Mechagodzilla*), Reg. No. PA 1-372-864; and

  e. *Godzilla X Mothra X Mechagodzilla Tokyo S.O.S.* (aka *Godzilla: Tokyo SOS*), Reg. No. PA 1-232-751.

Kotaki Decl., ¶ 7, Exh. "B."  These registered copyrights (collectively, the "Mechagodzilla Copyrights") cover all audiovisual elements in the motion pictures, including the appearance of the Mechagodzilla Character itself.  *See*, *e.g.*, *Toho Co. v. William Morrow & Co.*, 33 F. Supp. 2d 1206, 1216 (C.D. Cal. 1998) (referencing Godzilla, and holding that "where a character is visually depicted, and contains the requisite attributes of originality, a character is sufficiently delineated to receive copyright protection).

As a result of the success and popularity of its Godzilla motion pictures, Toho has engaged in the business of merchandising and licensing to others the right to use the characters appearing in its films.  Toho, by itself and through its authorized licensing agents, has licensed the name and likeness of Mechagodzilla on and in connection with action figures and other toys, comic books, t-shirts, video games, Christmas ornaments, key chains, bottle openers, and other merchandise.  Kotaki Decl., ¶ 8.

Given the popularity of the Godzilla franchise, a significant portion of Toho's business in the United States consists of licensing the right to use its characters in connection with third party product endorsements.  The Godzilla character, for example, has been used with

permission to promote and advertise Nike shoes, Kodak cameras, Taco Bell restaurants, Doritos corn chips, Honey Nut Cheerios cereal, Dr. Pepper soft drinks, Jeep/Chrysler automobiles, Sprint communication services and, as recently as this month, Snickers candy bars.  Indeed, with Toho's permission, Godzilla has been licensed for use in connection with alcoholic beverages, including a "Godzilla Wine" and a "Godzilla Sake," both sold in Japan.  Moreover, in 2007, Toho licensed *Godzilla* film clips for use in a television commercial for Yellow Tail Wine in the United States.  Kotaki Decl., ¶ 9.

B.      NOLA's Infringing Conduct

Defendant NOLA is a New Orleans-based brewery.  Beginning in or about September 2012, NOLA began to manufacture and distribute a brand of beer it that it called "Mechahopzilla."  Declaration of Aaron J. Moss ("Moss Decl."), ¶ 6, Exh. 7.  It is undisputed that NOLA named its beer after Toho's Mechagodzilla Character.  As NOLA's head brewmaster Peter Caddoo testified, NOLA was quite familiar with Toho's Godzilla franchise and considered the various characters in the Godzilla universe in deciding on a name for its new beer: "[T]here was this metal one, this machine, you know, and it was Mechagodzilla.  So we said we'll just call it [our beer] Mechahopzilla.  It's going to be twice as strong, I guess, as regular Godzilla." Deposition of Peter Caddoo ("Caddoo Depo."), 25:21-25 (Moss Decl., Exh. 1).

In addition to using a name that, visually and audibly, is virtually indistinguishable from "Mechagodzilla," NOLA engaged an artist to create a "mascot" for its Mechahopzilla beer that is substantially similar in appearance to the Mechagodzilla Character.  A comparison of the Mechagodzilla Character (on the left) and the image used on NOLA's Mechahopzilla beer cans (on the right) appears below:



Kotaki Decl., ¶ 10.

The back of NOLA's beer can advises consumers to "Beware of Mechahopzilla's powerful flavor and its attack of half pound per barrel dry hop-aroma."  Moss Decl., Exh. 9. NOLA's Vice President Dylan Lintern, described Toho's Mechagodzilla Character in his deposition as a "large creature that wreaks havoc," and further testified that Toho's character was "powerful," that it "attacks," and that it is something of which people should "beware" — all words that NOLA used on its beer can to describe its character.  Lintern admitted that, through this description, NOLA was attempting to convey additional similarities between the Mechagodzilla character and the Mechahopzilla character.  Deposition of Dylan Lintern ("Lintern Depo."), 26:24-27:24 (Moss Decl., Exh. 2).

Not only was NOLA aware of the Mechagodzilla Character and Mechagodzilla Marks, it is undisputed that that it intentionally chose the name "Mechahopzilla" for its beer and used a similar character image to Mechagodzilla in order to create an association with Toho's character in the mind of the public.

In describing the connection between Mechahopzilla and Mechagodzilla, Kirk Coco, NOLA's CEO, testified that "there's no way around that.  That's obvious.  Anybody who looks at Mechahopzilla cans or anything can see that we were definitely referencing Mechagodzilla."

Deposition of Kirk Coco ("Coco Decl."), 90:17-90:20 (Moss Decl., Exh. 3).  Peter Caddoo,

NOLO's brewmaster, testified that NOLA was "conjuring up the image of . . .Godzilla," and that

he wanted consumers to make that association.  Caddoo Depo., 39:25-40:13 (Moss Decl., Exh.

1):

> Q.     [T]he reason that, in your mind, the [Mechahopzilla]
>
>         name and character design worked was because
>
>         it would remind people of the Mechagodzilla
>
>         character, right?
>
> A.     Yes.

Caddoo Depo., 40:14-18 (Moss Decl., Exh. 1).

NOLA's efforts to associate itself and its beer with Toho's Mechagodzilla Character were

evident in other ways as well:

- In introducing its Mechahopzilla beer to the public, NOLA used a photograph of
  Mechagodzilla on its Facebook page to announce a "release party" for the beer.  Moss
  Decl., Exh. 7; Coco Depo., 88:4-90:20 (Moss Decl., Exh. 3).

- When NOLA retained a Seattle company, Tap Handles, LLC, to create tap handles for
  the beer (for use when the beer was sold in bars), NOLA sent the company a photograph
  of Toho's Mechagodzilla character to use as the basis for the design.  Moss Decl., Exh.
  10; Coco Depo., 117:1-5 (Moss Decl., Exh, 3).

- When describing the color it wanted to use for its keg collar, NOLA sent a photo of a
  Mechagodzilla toy to the designer, stating "I think it should be a little more metallic
  kinda silver, less grey than smokey.  *Trying to make it represent [M]echagodzilla* (see
  attached image)" (emphasis added).  Moss Decl., Exh. 8; Lintern Depo., 56:20-57:11,
  64:20-65:14 (Moss Decl., Exh. 2).

- NOLA conducted tours of its facility and had toy figures of Godzilla and Mechagodzilla
  sitting on top of its brewing equipment.  When customers asked about these characters,

NOLA would describe the plots of Godzilla films for the customers.  Caddoo Depo., 48:8-52:21 (Moss Decl., Exh. 1).

C.       NOLA's Attempt to Register Mechahopzilla as a Trademark

In October 2012, NOLA filed an application with the U.S. Patent and Trademark Office ("USPTO") to register "Mechahopzilla" as a trademark (Serial No. 85/746,093).  Moss Decl., Exh. 4.  When NOLA refused to withdraw its application, Toho filed an opposition with the USPTO.  Moss Decl., Exh. 5.  The USPTO has suspended the administrative opposition proceedings during the pendency of this lawsuit.  Moss Decl., Exh. 6.

III.   **ARGUMENT**

The relevant facts at issue in this case are undisputed.  Accordingly, Toho moves for partial summary judgment with respect to the following issues and claims: (1) for a finding that NOLA's "Mechahopzilla" does not constitute parody as a matter of law; (2) for a finding of liability in favor of Toho on its claim for trademark infringement under 15 U.S.C. §§ 1114 (First Claim for Relief) and for violation of the Lanham Act, 15 U.S.C. § 1125(a) (Third Claim for Relief); and (3) for a finding of liability in favor of Toho on its claim for dilution under Louisiana Revised Statute § 51:223.1 (Sixth Claim for Relief).

Toho brings this motion to significantly streamline the issues and claims remaining for trial, which will include Toho's claim for copyright infringement and issues relating to appropriate remedies.

A.       Summary Judgment Standards

Summary judgment or partial summary judgment is appropriate where there is no genuine issue as to any material fact.  *Mississippi River Basin Alliance v. Westphal*, 230 F.3d 170, 174 (5th Cir. 2000).  Here, the nature of Toho's intellectual property, what NOLA did, and why it did it, are not contested.  Thus, the issues raised by this motion can and should be summarily adjudicated.

B.    The Court Should Summarily Adjudicate that NOLA's Parody "Defense" is
      Without Merit as a Matter of Law

On February 2014, several months after filing its answer in this action, NOLA filed an
amended answer asserting, as an affirmative defense, that its "Mechahopzilla" name and
character constitute a non-infringing "parody" of Toho's Mechagodzilla Marks.  However,
NOLA's use of Mechahopzilla to brand its beer does not constitute parody as a matter of law.

As the Fifth Circuit has recognized, "the cry of 'parody!' does not magically fend off
otherwise legitimate claims of trademark infringement or dilution."  *Elvis Presley Enters., Inc. v.
Capece*, 141 F.3d 188, 198 (5th Cir. 1998) (citation omitted).  While true parodies that are
encompassed within works of artistic expression may be protected (*see*, e.g., *Cliffs Notes, Inc. v.
Bantam Doubleday Dell Publ'g Grp., Inc.,* 886 F.2d 490, 493 (2d Cir. 1989)), "[a] defendant's
claim of parody will be disregarded where the purpose of the similarity is to capitalize on a
famous mark's popularity for the defendant's own commercial use."  *Hard Rock Cafe Licensing
Corp. v. Pacific Graphics, Inc.*, 776 F. Supp. 1454, 1462 (W.D. Wash. 1991) (defendant's T-
shirt featuring "Hard Rain Cafe" logo infringed plaintiff's "Hard Rock Cafe" trademark).

Unless a defendant's mark comments in some way on the plaintiff's product, the
defendant's use is not "parody" under the law.  The United States Supreme Court made this clear
twenty years ago in *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 580 (1994) ("[T]he heart
of any parodist's claim to quote from existing material is the use of some elements of a prior
author's composition to create a new one that, at least in part, *comments on that author's works*")
(emphasis added).  *See also Dr. Seuss Enterprises, L.P. v. Penguin Books U.S.A., Inc.*, 109 F.3d
1394, 1400 (9th Cir. 1997) ("[u]nless the plaintiff's copyrighted work is *at least in part the
target* of the defendant's satire, then defendant's work is not a 'parody' in the legal sense")
(emphasis in original).

The same analysis applies when parody is asserted in connection with trademark
infringement.  *See*, *e.g*., *Harley-Davidson, Inc. v. Grottanelli*, 164 F.3d 806, 813 (2d Cir. 1999)
("[Defendant's] mark makes no comment on Harley's mark; it simply uses it somewhat

humorously to promote his own products and services, *which is not a permitted trademark parody use*.") (emphasis added).  "By analogy to copyright, if defendant appropriates a trademarked symbol such as a word or picture, not to poke fun at the product or company symbolized by the trademark, but only to appropriate a well-known symbol as a device to poke fun at something else in society, this is not 'parody' of a trademark."  6, J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition*, § 31:156, at 31-387-88 (4th ed. 2013).  Here, NOLA is not even poking fun at anything in society, much less Mechagodzilla.

Consistent with these authorities, the Fifth Circuit has held that a valid parody must not only conjure up, but specifically comment on, its target.  For example, in *Elvis Presley Enters.*, the Fifth Circuit reversed the district court and ordered entry of an unqualified injunction against use of "The Velvet Elvis" as the name of a 1960's-themed nightclub.  The target of the parody was "tacky" and "cheesy" bars; it was not Elvis Presley.  Thus, there was no need or justification for defendant to use the trademarked "Elvis" name.  "The Defendants' parody of the faddish bars of the sixties does not require the use of EPE's marks because *it does not target Elvis Presley*."  141 F.3d at 200 (emphasis added).  *See also Dr. Seuss Enters.*, 109 F.3d at 1401 ("Although [defendant's book] does broadly mimic Dr. Seuss' characteristic style, it does not hold *his style* up to ridicule") (emphasis in original).

Here, it is undisputed that NOLA's Mechahopzilla mark does not ridicule or comment on Toho's character or films.  NOLA simply used the marks as a vehicle to attract attention to (and ultimately sell) NOLA's beer by appropriating the cache of the Mechagodzilla Marks.  The deposition testimony of NOLA's Peter Caddoo conclusively demonstrates that parody in a legal sense is not operative here:

> Q.    So, in naming the beer Mechahopzilla, you
>        weren't intending to be disrespectful of the
>        Mechagodzilla character, were you?
>
> A.    Not really, no.

Q.    Were you intending to be disrespectful of the
people who produced the Godzilla movies?

A.    No.

Q.    Were you trying to say anything about Godzilla
or the people who make the Godzilla movies?

A.    I don't think I was trying to say anything
about the movies.

Q.    Or about the Mechagodzilla character?

A.    No, I wasn't trying to make a comment or
anything.

Q.    People did like the name, right, when they
heard it?

A.    They liked the name, yes.

Q.    They thought it was a cool name?

A.    They thought it was a cool name, thought it
would be a great name for a beer, I guess.

Caddoo Depo., 41:23-42:17 (Moss Decl., Exh. 1).

Only after NOLA appropriated the value of Toho's intellectual property, and was caught,
did NOLA take the after-the-fact position that its use of "Mechahopzilla" is legally protected as
parody.  According to NOLA, it was attempting to be "funny" and this was just a "joke":

Q.    What do you — when you say parody, what do
you mean by that?

A.    A joke.  It's supposed to be funny.  It's
supposed to be a fictional creation that we
made up.

Lintern Depo., 28:14-18 (Moss Decl., Exh. 2).

> Q.    . . . [H]ow does it make
>        fun of Godzilla?
>
> A.    Because Godzilla is not a hop monster.  I
>        mean, you're asking me to explain humor to
>        you.  If you don't get it, I can't help you.
>        I don't know what you want me to say.

Coco Depo., 64:20-25 (Moss Decl., Exh. 3).

Parody as a legal matter does not mean that something is clever or cute.  NOLA's desire to be funny does not give it the right to convert Mechagodzilla into an involuntary, unpaid mascot for its beer.  In several cases, courts have held that a pun or "play on words" is not protectable and have enjoined these uses.  In *Nabisco Brands, Inc. v. Kaye*, 760 F. Supp. 25, 28 (D. Conn. 1991), the court granted summary judgment for the plaintiff over defendant's assertion that its use of the mark "A.2" on a steak sauce was a "pun" on the "A.1" trademark.  Similarly, the Trademark Board refused registration to the mark "Clothes Encounters" for apparel, an allegedly humorous reference to the movie title "Close Encounters."  *Columbia Pictures Industries, Inc. v. Miller,* 211 U.S.P.Q. 816, 1981 WL 40497  (T.T.A.B. 1981).

In contrast to the above cases, and consistent with the legal definition of parody, is the Fourth Circuit's opinion in *Louis Vuitton Malletier  S.A. v Haute Diggity Dog, LLC*, 507 F.3d 252 (4th Cir. 2007).  There, defendant manufactured a line of dog toys that it called "Chewy Vuitton."  The famous handbag manufacturer complained, but the Court found there was parody because the dog toy "pokes fun at the elegance and expensiveness of a LOUIS VUITTON handbag, which must *not* be chewed by a dog. . . .The dog toy is a comment on the rich and famous, on the LOUIS VUITTON name and related marks, and on conspicuous consumption in general."  507 F.3d at 261.  But there is nothing like that here.  NOLA is not poking fun at, commenting on, or making any kind of statement at all about Toho, its films, the Mechagodzilla

- 13 -

character, or anything else.  It is simply using the fame and public recognition of the character to draw attention to itself and its beer.

Presumably, even NOLA realizes it has no legitimate defense of parody.  It did not even mention parody in its initial pleading.  It only did so as an afterthought, in an amended pleading, long after the case was filed.  But afterthought or not, based on the undisputed facts, what NOLA did is not parody and this should be summarily adjudicated.

     C.     <u>The Court Should Summarily Adjudicate that NOLA's Use of "Mechahopzilla" Infringes Toho's Trademarks</u>

Section 32 of the Lanham Act, 15 U.S.C. § 1114(1)(a), prohibits a defendant from using in commerce "any reproduction, counterfeit, copy, or colorable imitation of a registered mark" in a manner that is "likely to cause confusion, or to cause mistake, or to deceive."  Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A), prohibits a defendant from using a mark that "is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association" of defendant or defendant's products with the plaintiff, or "as to the origin, sponsorship, or approval of [defendant's] goods, services, or commercial activities by [plaintiff]."

To prevail on its claims under these statutes, Toho must prove: (1) ownership in a legally protectable mark; and (2) infringement by demonstrating a likelihood of confusion.  *Bd. of Supervisors for Louisiana State University Agricultural and Mechanical College v. Smack Apparel Co.*, 550 F.3d 465, 474 (5th Cir. 2008).

     1.     The Mechagodzilla Marks Are Valid and Protectable

There is no dispute that Toho owns federal trademark registrations for the Mechagodzilla word mark and design mark, with dates of first use in interstate commerce more than a decade before NOLA began selling its Mechahopzilla beer.  Toho's trademarks were registered in 1999.  Kotaki Decl., ¶ 6, Exh. A.  NOLA started selling its beer in 2012.  Toho's trademark

registrations are *prima facie* evidence of the validity of Toho's trademarks and Toho's exclusive right to use the Mechagodzilla Marks in commerce.  15 U.S.C. § 1115(a).

        2.    Consumers Are Likely to be Confused as to the Source of the Infringing Products

Once a plaintiff demonstrates ownership of a protectable trademark, to prevail on a trademark or Lanham Act claim, it must show that the defendant's use of the mark "creates a likelihood of confusion in the minds of potential consumers as to the source, affiliation, or sponsorship" of the product at issue.  *Elvis Presley Enters.*, 141 F.3d at 193 (citations omitted).  *See also* 15 U.S.C. §§ 1114(1), 1125(a)(1)(A).  Proof of actual confusion is unnecessary.  *Smack Apparel,* 550 F.3d at 483.

In determining whether a likelihood of confusion exists, courts within the Fifth Circuit consider the following non-exhaustive "digits of confusion": (1) the type of trademark; (2) mark similarity; (3) product similarity; (4) outlet and purchaser identity; (5) advertising media identity; (6) defendant's intent; (7) actual confusion; and (8) care exercised by potential purchasers.  *Smack Apparel*, 550 F.3d at 478.

Where, as here, the underlying facts are undisputed, it is appropriate for the district court to evaluate the digits of confusion and grant summary judgment (or, as here, partial summary judgment) on a claim of trademark infringement if it concludes that consumer confusion is likely.  *Smack Apparel*, 550 F.3d at 483; *Beef/Eater Restaurants, Inc. v. James Burrough Limited*, 398 F.2d 637, 638-40 (5th Cir. 1968); *Dallas Cowboys Football Club, Ltd. v. America's Team Properties*, *Inc*., 616 F. Supp. 2d 622, 641-42 (N.D. Tex. 2009).

Significantly, "[n]o single factor is dispositive, and a finding of a likelihood of confusion need not be supported by a majority of the factors."  *Smack Apparel*, 550 F.3d at 478; *Conan Properties*, *Inc. v. Conans Pizza, Inc.*, 752 F.2d 145, 150 (5th Cir. 1985).  Even a single factor "may alone be sufficient to justify an inference that there is a likelihood of confusion."  *Smack Apparel*, 550 F.3d at 481.  Indeed, although the court in *Smack Apparel* analyzed each of the

digits, it found that just two — the overwhelming similarity of the marks and the defendant's intent to profit from the plaintiff's reputation — were sufficient to establish likelihood of confusion for the plaintiff on summary judgment. *See id.* at 483, 485.

As discussed below, a review of the applicable digits of confusion, coupled with the undisputed facts, "compels the conclusion that the movant is entitled to judgment as a matter of law." *Id.*, at 474.

### a.    Type of Trademark

"Type of trademark" refers to the strength of the senior mark. *Elvis Presley Enters.*, 141 F.3d at 201. Stronger marks are entitled to greater protection. *Amstar Corp. v. Domino's Pizza, Inc.*, 615 F.2d 252, 259 (5th Cir. 1980). "A fictitious, arbitrary or fanciful mark . . . is a strong mark that is patently distinctive to consumers." *Louisiana World Exposition, Inc. v. Logue*, 746 F.2d 1033, 1040 (5th Cir. 1984). In previous cases involving Toho's Godzilla trademark, courts have found that mark to be "very strong" for likelihood of confusion purposes. *See, e.g., Toho Co., Ltd.*, 33 F. Supp. 2d at 1214 (characterizing Godzilla as "a fanciful, arbitrary word used to describe a fire-breathing, pre-historical, often-schizophrenic dinosaur"). Toho's use of "Mecha" before "Godzilla" to designate the mechanical robot monster used to fight Godzilla is no less distinctive than Godzilla, and is arguably even more fanciful as a result of the prefix.

In addition, the strength of the Mechagodzilla Mark is evidenced by the numerous Godzilla films that have featured the Mechagodzilla Character (going back to 1974) and, of course, by NOLA's own conduct. NOLA was familiar with the Mechagodzilla character and believed that it so resonated with the public that it purposefully chose a name for its beer that would create an association with Toho's protected character.

### b.    Mark Similarity

"Mark similarity" is "determined by comparing the marks' appearance, sound, and meaning." *Elvis Presley Enters.*, 141 F.3d at 201. "This factor has been described as 'really nothing more than a subjective eyeball test.'" *Exxon Corp. v. Texas Motor Exchange of*

*Houston, Inc.*, 628 F. 2d 500, 504 (5th Cir. 1980) (citation omitted).  "The similarity of design is determined by considering the overall impression created by the mark as a whole rather than simply comparing individual features of the marks."  *Id*. at 504-05.

"Mechagodzilla" and "Mechahopzilla" have an extraordinarily high degree of similarity: "Mechahopzilla" differs from "Mechagodzilla" by only two letters buried in the middle of the words.  Both are 13 letters long.  As to pronunciation, both start and end with the same sounds: "Mecha" and "zilla."  The sound in the middle: "god" in the case of Toho's mark and "hop" in the case of NOLA's beer, each features a one syllable short o ("ah") sound.  When said aloud the two are virtually indistinguishable.  Instructive is *Exxon Corp., supra*, in which the district court found the use of "Texon" and "EXXON" so similar as to be confusing.  628 F.2d at 507. Mechahopzilla and Mechagodzilla are even more so.

Regarding meaning, NOLA has conceded that Mechahopzilla was designed to be the "mechanical version" of a "hop monster" (whatever that is), just as Mechagodzilla is the mechanical version of Godzilla.  Lintern Depo., 37:25-40:7 (Moss Decl., Exh. 2).

Further, it is not just the words that are similar.  NOLA has exacerbated the situation and dramatically enhanced the similarity by purposefully using a monster character on its beer can that closely resembles Mechagodzilla (page 7, *supra*) and by endowing that character with the same traits as Mechagodzilla (*id.*).

c.     Product Similarity

While NOLA will likely argue that the public will not be confused because Toho produces movies, and not beer, this position is misplaced both factually and legally.  As discussed above, in addition to producing films featuring the Godzilla family of characters, Toho is also in the business of licensing others to use those characters on products such as apparel, comic books, video games, and household merchandise.  Toho also licenses third party product endorsements.  Kotaki Decl., ¶ 9.  Godzilla has been featured in advertisements for products as diverse as Nike shoes, Kodak cameras, Taco Bell restaurants, Doritos corn chips, Honey Nut

Cheerios cereal, Dr. Pepper soft drinks, Jeep/Chrysler automobiles, Sprint communication services and Snickers candy bars.  Indeed, Toho's licensing activities have, in the past, even extended to NOLA's core business of alcoholic beverages.  *Id*.  As discussed above, Toho has licensed its Godzilla trademark for use on wine and sake in Japan, and for use in a wine commercial in the United States.  *Id*.

Direct competition between the parties' services or products is not required in order to find a likelihood of confusion.  "[F]alsely suggesting an affiliation with the trademark owner in a manner likely to cause confusion as to source or sponsorship constitutes infringement." *Professional Golfers Ass'n of Am. v. Bankers Life & Cas. Co*., 514 F.2d 665, 670 (5th Cir. 1975). *See also Elvis Presley Enters*., 141 F.3d at 202 ("When products or services are noncompeting, the confusion at issue is one of sponsorship, affiliation or connection.")

In today's economy, celebrities, athletes and entertainment companies often allow others to use their images, intellectual property and trademarks to promote or sponsor someone else's goods.  Where, as here, Toho is squarely in the licensing business, the likelihood of sponsorship confusion is likely.

This was expressly acknowledged in *Conan Properties, Inc.*, in which the Fifth Circuit expressly rejected defendant's argument that "no reasonable person could have believed that its restaurants were related to . . . CONAN THE BARBARIAN" — the entertainment mark owned by plaintiff — "since the products and services each provided were different."  752 F.2d at 150. According to the Court, although plaintiff "never licensed any entity to use its mark in connection with restaurant services, ordinary consumers may well believe that [defendant's mark] was in fact licensed by [plaintiff]."  *Id*.  Indeed, when addressing the pervasiveness of literary characters being licensed "to promote everything from children's toys to fast-food restaurants," the Court observed that "[m]any of today's consumers expect such endorsements and act favorably toward them."  *Id*.

Further, precisely the same argument made by NOLA (i.e., no one will be confused because Toho is not in the beer business) was categorically rejected by the Eleventh Circuit in

*University of Georgia Athletic Ass'n v. Laite*, 756 F.2d 1535 (11th Cir. 1985), a case remarkably similar to ours.  In that case, plaintiff brought a trademark action against a brewer who distributed a beer that he called "Battlin' Bulldog."  On his beer can, defendant featured a drawing of a bulldog that was similar, but not identical to, the University's bulldog mascot.  Even though the University was not in the beer business, defendant's conduct was enjoined and the injunction was affirmed on appeal.  The court specifically noted that it was irrelevant that the University was not a brewery.  Citing to the Fifth Circuit's decision in *Boston Prof. Hockey Ass'n v. Dallas Cap & Emblem Mfg., Inc.*, 510 F.2d 1004 (5th Cir 1975), the Court held that "confusion need not relate to the origin of the challenged *product*.  Rather, confusion may relate to the public's knowledge that the *trademark* which is the triggering mechanism for the sale of the product originates with the plaintiff."  756 F.2d at 1546 (emphasis in original).

d.    Outlet and Purchaser/Advertising Media Identity

While the location in which goods are sold and the manner in which goods are advertised are factors that are often evaluated in determining a likelihood of confusion, where, as here, the parties are not competitors and the issue is whether there is likely confusion as to sponsorship, association or endorsement, these factors are not significant.  *See University of Georgia*, 756 F.2d at 1547 (lack of similarity of product, identity of retail outlets and purchasers, and identity of advertising media utilized are not significant when "the confusion stems not from the defendant's unfair competition with the plaintiff's *products*, but from the defendant's misuse of the plaintiff's reputation and good will") (emphasis in original).

e.    Defendant's Intent

"The 'intent of defendants in adopting [their mark] is a critical factor, since if the mark was adopted with the intent of deriving benefit from the reputation of [the plaintiff,] *that fact alone may be sufficient to justify the inference that there is confusing similarity*.'"  *Chevron Chem. Co. v. Voluntary Purchasing Grps., Inc.*, 659 F.2d 695, 703-04 (5th Cir. 1981) (emphasis in original) (citation omitted).

- 19 -

Indeed, the Fifth Circuit has gone so far as to *presume* confusion when such intent is present. "A showing that the defendant intended to use the allegedly infringing mark with knowledge of the predecessor's mark may give rise to a presumption that the defendant intends to cause public confusion as to the source or sponsorship of the product or service." *Conan Properties*, 752 F.2d at 151 n.2. See also *AMF, Inc. v. Sleekcraft Boats*, 599 F.2d 341, 354 (9th Cir. 1979) ("When the alleged infringer knowingly adopts a mark similar to another's, reviewing courts presume that the defendant can accomplish his purpose: that is, that the public will be deceived.").

Here, it is undisputed that NOLA acted intentionally in choosing a name that would create an association with Toho's mark. Instructive is *Sunbeam Products, Inc. v. West Bend Co.*, 123 F.3d 246, 258 (5th Cir. 1997), *overruled in part on other grounds by Traffix Devices, Inc. v. Mktg. Displays, Inc.*, 532 U.S. 23, 28 (2001). In *Sunbeam Products*, the Court found an intent to create confusion. Not only was this intent properly inferred from defendant's conduct, but it was "corroborated by direct evidence: [defendant] submitted a picture of [plaintiff's product] to its manufacturer in China, directing its attention to 'this one.'" 123 F.3d at 258. The same thing occurred here when NOLA sent Tap Handles, LLC a picture of Toho's Mechagodzilla character to use as the basis for its tap handle design. Moss Decl., ¶ 9, Exh. 10; Coco Depo., 117:1-5 (Moss Decl., Exh. 3).

f.    Actual Confusion

While evidence of actual confusion will strongly suggest that there is a likelihood of confusion, there is no requirement that actual confusion be established. *Smack Apparel*, 550 F.3d at 483.

g.    Care Exercised by Potential Purchasers

"Where items are relatively inexpensive, a buyer may take less care in selecting the item, thereby increasing the risk of confusion." *Smack Apparel*, 550 F.3d at 483. It is beyond any debate that buying a can of beer or ordering a beer on tap at a bar is not a major or expensive

- 20 -

purchase.  This factor then points to a likelihood of confusion.  Put another way, customers who are familiar with Godzilla and Mechagodzilla, when buying a beer are not likely to carefully consider and analyze whether Toho is really sponsoring or associated with this product.   Given the strength of Toho's mark and similarity of the unique names, it is likely that they will assume an association, especially given NOLA's intent.

As stated previously, the law is clear that it is not necessary that all of the "digits of confusion" point to a likelihood of confusion in order for (partial) summary judgment to be granted.  Where, as here, the underlying facts are not in dispute, the Court can evaluate the factors and summarily adjudicate the issue.  In this case, the evaluation is straightforward: Toho's mark is strong; "Mechagodzilla" and "Mechahopzilla" are virtually indistinguishable in sight and sound; and NOLA intended to create an association with Toho's copyrighted and trademarked character.

D.      The Court Should Summarily Adjudicate that NOLA has Violated Louisiana's Anti-Dilution Statute

If for any reason the Court is not inclined to grant summary adjudication on Toho's trademark and Lanham Act claims, partial summary judgment should be granted, at a minimum, on Toho's claim under Louisiana's Anti-Dilution Statute.

This statute protects against the "[l]ikelihood of injury to business reputation or of dilution of the distinctive quality of a mark."  La. Rev. Stat. § 51:223.1.  A plaintiff's trademark can be diluted "notwithstanding the absence of competition between the parties or the absence of confusion as to the source of goods or services."  *Id.*

While case law applying the state's anti-dilution statute is relatively sparse, the Louisiana Supreme Court has noted that "[t]he anti-dilution cause of action is an extremely wide-reaching one, applying even in the absence of competition between the users of the mark and even in the absence of confusion as to the source of goods, and is thus a much more expansive cause of

action than infringement, which does require proof of a likelihood of confusion." *Gulf Coast Bank v. Gulf Coast Bank & Trust Co.*, 652 So.2d 1306, 1312 (La. 1995).

The statute protects trademark owners such as Toho in situations, such as here, in which a third party usurps a trademark, modifies it imperceptibly, and seeks to capitalize on the public's recognition of the senior mark for its own commercial benefit.

Unlike the Federal Dilution Act (15 U.S.C. § 1125(c)), the Louisiana statute does not require that plaintiff's mark be "famous." Rather the statute applies so long as the plaintiff's mark is "distinctive." *Advantage Rent-A-Car, Inc. v. Enterprise Rent-A-Car, Co.*, 238 F.3d 378, 381 (5th Cir. 2001). The Louisiana statute "protects a mark based upon its strength . . . [and] such strength can be demonstrated by showing a mark to either be distinctive or to have acquired a secondary meaning." *Prudhomme v. Proctor & Gamble Co.*, 800 F. Supp. 390, 395 (E.D. La. 1992). Toho's mark is clearly distinctive. The Mechagodzilla name is unique and fanciful. Moreover, the mark is registered and "registered trademarks are presumed to be distinctive and should be afforded the utmost protection." *Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.*, 799 F.2d 867, 871 (2d Cir. 1986). Toho's registration also creates a presumption that the mark has secondary meaning. *Americana Trading Inc. v. Russ Berrie & Co*, 966 F.2d 1284, 1287 (9th Cir. 1992).

Other than the absence of a requirement that the mark be "famous," Louisiana's anti-dilution law is not significantly different than the Federal Dilution Act, and is therefore subject to the same analysis. *See Dallas Cowboys Football Club*, 616 F. Supp. 2d at 642-43 (applying federal standard to Texas anti-dilution statute other than as to "fame" requirement).

"Trademark dilution is the weakening of the ability of a mark to clearly and unmistakably distinguish the source of a product." *The Scott Fetzer Co. v. House of Vacuums Inc.*, 381 F.3d 477, 489 (5th Cir. 2004). Dilution by blurring, the type asserted by Toho in this case, refers to an "association arising from the similarity between a mark or trade name and a famous mark that impairs the distinctiveness of the famous mark." 15 U.S.C. § 1125(c)(2)(B). "Blurring involves

a diminution in the uniqueness or individuality of a mark because of its use on unrelated goods."

*Dallas Cowboys Football Club,* 616 F. Supp. 2d. at 642.

The federal statute is instructive as to which factors will establish blurring.  Putting aside the issue of whether the plaintiff's mark is "famous" (a requirement under federal law, but not Louisiana law ), in determining whether a mark or trade name is likely to cause dilution by blurring, court may consider all relevant factors, including the following that are specifically referenced in the statute:

(i)      The degree of similarity between the mark or trade name and the famous mark;

(ii)     The degree of inherent or acquired distinctiveness of the famous mark;

(iii)    The extent to which the owner of the famous mark is engaging in substantially exclusive use of the mark;

(iv)    The degree of recognition of the famous mark;

(v)     Whether the user of the mark or trade name intended to create an association with the famous mark; and

(vi)    Any actual association between the mark or trade name and the famous mark.

15 U.S.C. § 1125(c)(2)(B).

Here, all of these factors are weigh in Toho's favor.  The similarity in sight and sound between "Mechagodzilla" and "Mechahopzilla" is palpable and obvious.  Toho's mark is distinctive as described above.  Until NOLA's infringing conduct, Toho and its licensees were exclusively using the mark.  The degree of recognition of the Mechagodzilla mark is evident by its long-standing use by Toho and NOLA's admitted familiarity with the mark.  Perhaps most importantly, NOLA admits that it intentionally chose the Mechahopzilla name in order to create an association with Toho's pre-existing Mechagodzilla character.  A clearer case of blurring would be difficult to imagine.

Also instructive is *E.J. Gallo Winery v. Spider Webs, Ltd.*, 286 F.3d 270 (5th Cir. 2002). There, defendant took the Ernest and Julio Gallo trademark and created an ernestandjuliogallo.com website.  The conduct was wrongful on a number of different levels, but among them was trademark dilution under the Texas anti-dilution statute.  Summary judgment was granted for plaintiff and affirmed on appeal.  The court held that plaintiff's trademark was diluted because defendant's conduct precluded plaintiff from using its trademark in the way that had been usurped by the defendant.  *Id.* at 279.  The same reasoning applies here.  By unilaterally taking Toho's Mechagodzilla trademark and using it on beer, NOLA, in effect, has prevented Toho from doing so itself.  Licensing its Mechagodzilla mark or character for alcohol is no longer an option for Toho since NOLA has invaded the market.  Indeed, it is unlikely that anyone would want to license Godzilla for beer, at least in the southern United States, since NOLA has already (and improperly) created an association between its products and Toho's characters.

The point here is not whether Toho would have engaged in such licensing.  Maybe it would have; maybe not.  (As indicated above, Toho has licensed its Godzilla character for use in connection with alcoholic beverages).  But either way, in taking Toho's trademark and using it on its own goods, NOLA has blurred the distinctive character and uniqueness of Toho's mark. This is what the anti-dilution statute is designed to prevent.  Therefore, Toho's claim under Louisiana's Anti-Dilution Statute should be summarily adjudicated in its favor.

## IV.   **CONCLUSION**

For the foregoing reasons, Toho requests that the Court grant partial summary judgment in its favor with respect to the following issues and claims: (1) for a finding that NOLA's use of Mechahopzilla does not constitute a parody as a matter of law; (2) for a finding of liability in favor of Toho on its claim for trademark infringement and for violation of the Lanham Act; and

(3) for a finding of liability in favor of Toho on its claim for dilution under Louisiana state law.

Respectfully submitted,

Dated: March 14, 2014                    By: /s/ *Lesli D. Harris*
                                                    STONE PIGMAN WALTHER
                                                    WITTMANN LLC
                                                    LESLI D. HARRIS (Bar No. 28070)
                                                    lharris@stonepigman.com
                                                    ANNE-MARIE J. MITCHELL (Bar No.
                                                    34329)
                                                    amitchell@stonepigman.com
                                                    546 Carondelet Street
                                                    New Orleans, LA  70130
                                                    Telephone:   (504) 581-3200
                                                    Facsimile:   (504) 596-0938

                                                    Attorneys for Plaintiff
                                                    TOHO CO., LTD

Dated: March 14, 2014                    By: /s/ *Aaron J. Moss*
                                                    GREENBERG GLUSKER FIELDS
                                                    CLAMAN & MACHTINGER LLP
                                                    AARON J. MOSS (CA Bar No. 190625)
                                                    amoss@GreenbergGlusker.com
                                                    CHARLES N. SHEPHARD (CA Bar
                                                    No. 078129)
                                                    cshephard@GreenbergGlusker.com
                                                    1900 Avenue of the Stars, 21st Floor
                                                    Los Angeles, CA  90067
                                                    Telephone:   310.553.3610
                                                    Facsimile:   310.553.0687

                                                    Attorneys for Plaintiff
                                                    TOHO CO., LTD

<u>CERTIFICATE</u>

I hereby certify that a copy of the above and foregoing Plaintiff Toho Co., Ltd.'s Memorandum in Support Motion for Partial Summary Judgment has been served upon all counsel of record via email and United States Mail Postage pre-paid, this 14th day of March, 2014.

<u>/s/ Aaron J. Moss</u>

84800-00093/2133650.11